# In the United States Court of Federal Claims

No. 19-1672C
(Filed September 30, 2021)
NOT FOR PUBLICATION

```
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
                                           *
FLORDELIZA A. HAWKINS,                      *
                                           *
              Plaintiff,                    *
                                           *
      v.                                    *
                                           *
THE UNITED STATES,                          *
                                           *
              Defendant.                    *
                                           *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

## MEMORANDUM OPINION AND ORDER

WOLSKI, Senior Judge.

The matter before this court is defendant's motion to dismiss this case. *See* Def's Mot. to Dismiss (Def's Mot.), ECF No. 11. Flordeliza A. Hawkins, proceeding *pro se*, brought this action alleging that private, state government, and federal government parties violated her rights by evicting her and her husband from their home in 2013. *See* Compl. at 4–7.[1] Plaintiff has presented similar versions of this complaint before several state and federal courts, including one this court dismissed for lack of subject-matter jurisdiction. *See Hawkins v. United States*, No. 18-78L, 2018 WL 3214048 (Fed. Cl. June 29, 2018), *aff'd*, 748 F. App'x 325 (Fed. Cir. 2019).[2]

---

[1] Most of plaintiff's papers do not include any form of pagination. The Court utilizes the pagination provided in ECF. The Court will accept "uncontroverted factual allegations" as true. *See Shoshone Indian Tribe of Wind River Res., Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). As for disputed factual allegations, they will be treated as true only insofar as they are not "predicate jurisdictional facts." *See Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993).

[2] *See also Hawkins v. SunTrust Bank*, No. 56-2014-453733, 2015 WL 3455863 (Ventura Cnty. Super. Ct. May 12, 2015), *aff'd*, 246 Cal. App. 4th 1387 (2016); *Hawkins v. SunTrust Bank*, No. 8:18-cv-178, 2018 WL 4959099 (D.S.C. May 25,

The government has moved to dismiss this complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), on the ground that the court still lacks jurisdiction to entertain plaintiff's claims, despite their present repackaging. The government also suggests that "because Ms. Hawkins has [already] litigated the issue of this Court's jurisdiction, the doctrine of issue preclusion bars another round of litigation on the jurisdictional issue." Def's Mot. at 5 n.5. For the reasons stated below, the defendant's motion to dismiss this case is **GRANTED**.

## I. BACKGROUND

In the current complaint before the court, and in a subsequent supplement, plaintiff repeats the general facts that have previously been litigated in various fora. Apparently, in 2006 Mrs. Hawkins and her husband obtained a loan from SunTrust Bank to fund a new restaurant, using their home in Anderson County, South Carolina as collateral. Compl. at 2, 4. The restaurant was unprofitable and was forced to close in 2009. *Id.* Consequently, plaintiff and her then-ailing husband defaulted on their loan and SunTrust Bank foreclosed on their home in April of 2012. *Id.;* Def's Mot. App. 1–10. In 2013, the Anderson County Sheriff's Office (Sheriff) purportedly evicted Mrs. Hawkins and her husband in furtherance of this foreclosure. Compl. at 6. Mister Hawkins's condition worsened, as he was disabled and bedridden at the time of the eviction. *Id.* 4–5. The eviction evidently exacerbated his condition to such an extent that Mr. Hawkins was hospitalized and then admitted to hospice care. *Id.* at 5–6. Around the same time, the South Carolina Department of Social Services (SCDSS) seemingly determined that Mrs. Hawkins could no longer care for her husband and limited her visitation. *Id.* While Mrs. Hawkins sought to coordinate with SCDSS as to her husband's proper care, Mr. Hawkins evidently passed away as a result of being given morphine, to which he was allergic. *Id.*

On January 16, 2018, Mrs. Hawkins filed her first complaint in this court seeking $2,000,000 in compensation. *See generally Hawkins v. United States*, No. 18-78L, 2018 WL 3214048, at *1 (Fed. Cl. June 29, 2018) ("*Hawkins I*"). Although her filings were difficult to discern, and were initially styled as a takings claim, her argument seemed to largely focus on the foreclosure on her home. Plaintiff argued that the United States Department of Housing and Urban Development (HUD) was something of guarantor of the restaurant loan and, therefore, could be held responsible for SunTrust Bank's allegedly wrongful foreclosure proceedings against her. *Id.* at *1–2. She based her theory of recovery on the use of a HUD-issued form in the mortgage transaction, and the existence of housing statutes and regulations

_____

2018), *aff'd mem.*, 764 F. App'x 289, 290 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 135 (2019).

she believed HUD failed to enforce. *Id.* at *2. She sought to hold HUD responsible for the eviction of her household and damage this did to her and her husband, allegedly in violation of various constitutional and (unspecified) civil rights. *Id.* at *1–2.

The Court dismissed Mrs. Hawkins's complaint under RCFC 12(b)(1) for lack of subject-matter jurisdiction. *Id.* at *8. To the extent her claim could be construed as involving the breach of a contract with the United States, the Court found that Mrs. Hawkins had failed to plead the elements of such a contract. *Hawkins I*, 2018 WL 3214048, at *5. Her takings claim failed for failure to credibly allege federal involvement in the foreclosure or the public use of her property. *Id.* at *5–6. broadly. The other constitutional provisions she identified---the Fourth, Ninth and Fourteenth Amendments---did not mandate the payment of money by the federal government, and Mrs. Hawkins failed to identify any money-mandating provision of law that was allegedly violated by the federal government. *Id.* at *6–7. And Congress has expressly withheld torts from our jurisdiction. *Id.* at *8.

This dismissal was appealed by Mrs. Hawkins to the Federal Circuit, where she argued that her constitutional rights were violated by HUD. *Hawkins v. United States*, 748 F. App'x 325, 326 (Fed. Cir. 2019) (*Hawkins II*). The Federal Circuit affirmed this Court's judgment, agreeing that no constitutional claim within our subject-matter jurisdiction was presented. *Id.* at 326–27.

While her previous case in this court was on appeal, the U.S. district court in South Carolina dismissed a case she brought against SunTrust Bank, SCDSS, and the Sheriff. *See* Compl., Ex. 1 at 2. She appealed that matter to the Fourth Circuit, which affirmed the dismissal on April 8, 2019. *See id.* at 1. Those results seemingly prompted Mrs. Hawkins to return to our court. On the complaint form she submitted for the present case, she added to the caption the three defendants from the district court matter, and inserted the Fourth Circuit case number and the names of the district judge and magistrate judge who presided over her case in the trial court. *See* Compl. at 1.[3] This initial complaint primarily concerns the bank and the two South Carolina entities, and contains but fleeting references to HUD--- which was allegedly "complicit" because "if HUD had done [its] job," the others would not have been able to break laws and deprive Mrs. Hawkins of her rights. Compl. at 2.

---

[3] A third case Mrs. Hawkins filed in this court, *Hawkins v. United States*, No. 19-1794C (Fed. Cl. filed November 18, 2019), appears to have been prompted by the Supreme Court's denial of her petition for writ of certiorari to the Fourth Circuit, as she placed the Supreme Court's docket number on the complaint form. *See* No. 19-1794C, Complaint, ECF No. 1 at 1; *see also Hawkins v. SunTrust Bank*, 140 S. Ct. 135 (2019) (denying petition).

In an amendment to the complaint, filed a few weeks later, Mrs. Hawkins elaborated upon her theory of federal government involvement. She reiterated her belief that HUD was a party to her mortgage agreement, asserting that its name appears on the form used "because [HUD was] the source of the money provided" to the bank, which she characterized as "just the servicer." Amend. to Compl., ECF No. 5 at 15. She argued that the contract was "unenforceable," *id.* at 14–15, 17, 19, and that it was broken, making HUD "accountable for the action on the government sponsored foreclosure and eviction," *id.* at 14. She also explained that she was appealing the district court decision to our court. *Id.* And Mrs. Hawkins argued that a claim under the Tucker Act, 28 U.S.C. § 1491, can be stated because HUD failed to follow "the rules and laws on housing." *Id.* at 19.

But, as noted earlier, Mrs. Hawkins focuses on the actions of SunTrust Bank, SCDSS, and the Sheriff. Plaintiff first alleged that SunTrust Bank "sold [her] house without [her] knowledge" and thus breached a purported contract to allow repayment of the loan through 2025. *See* Compl. at 4–5. Moreover, Mrs. Hawkins claimed that by causing her eviction, SunTrust Bank violated the 4th, 7th, 13th, and 14th Amendments. *Id.* at 5. Specifically, plaintiff argued that SunTrust Bank seized her house "without proper documentation," did not have her loan properly signed, deprived her of the opportunity of a court proceeding to defend her interests, denied her "equal protection of the law in housing," and engaged in "inhumane" conduct by evicting her husband at a time when he was bedridden. *Id.*; Amend. to Compl. at 15, 18. She also suggested that a George W. Bush or Obama administration-era law was violated which forgives loans when a personal residence was used as collateral. Compl. at 5.[4]

Plaintiff additionally alleged SCDSS improperly removed her husband from her care, limited her access to him, and caused his death, in violation of the 13th Amendment and the entire Bill of Rights. *Id.* at 5–6. Regarding the Sheriff, Hawkins contended that his office improperly carried out the eviction, precipitating the loss of shelter for her and her husband and eventually starting a chain of events resulting in her husband's death, in violation of the 13th Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Bill of Rights. *Id.* 6–7. And although she did not expressly link them to the actions of HUD or the other entities, she cited 42 U.S.C. § 14141, 42 U.S.C. § 3631, and 18 U.S.C. § 242 as supporting our jurisdiction over her case, under the Tucker Act and the Contract

---

[4] It seems that Mrs. Hawkins was referring to the Mortgage Forgiveness and Debt Relief Act, which concerned the taxation of debt forgiven by private lenders. *See* Pub. L. No. 110–142, 121 Stat. 1803 (2007) (amending 26 U.S.C. § 108(a)(1)(E) so that "discharged qualified principal residence indebtedness" no longer qualified as gross income for tax purposes). As her case concerns neither forgiven debt nor taxes, the provision is irrelevant to this matter.

Disputes Act, 41 U.S.C. § 7104. *See* Amend. to Compl. at 12–13. As part of her amendment to the complaint, Mrs. Hawkins included a notice of appeal which references the dates of the Federal Circuit and Fourth Circuit decisions, suggesting she believes a review of those decisions may take place in our court. *See id.* at 22. In her initial complaint she sought at total of $3 million based on the actions of the non-federal entities, *see* Compl. at 3–7, but her amendment to the complaint sought $2 million due to HUD's actions plus the return of her house, *see* Amend. to Compl. at 6, 9, 13, 16, 19.[5]

The government has filed a motion to dismiss this case under RCFC 12(b)(1). It argues that the court lacks jurisdiction because the court has already addressed many of Mrs. Hawkins's claims in *Hawkins I*, Def.'s Mot. at 1, 5 n.5; the complaint was filed more than six years after claims accrued, and is thus barred by 28 U.S.C. § 2501, *id.* at 5–6; no taking of her property by the federal government for a public use was alleged, *id.* at 8; no other money-mandating provision of law has been identified, *id.* at 7–8; and no contract with the federal government has been properly alleged, *id.* at 9–10.

In her response to the government's motion, Mrs. Hawkins begins by mentioning the Due Process and Takings clauses of the Fifth Amendment, and the Bill of Rights generally, and maintains that our court has exclusive jurisdiction under the Tucker Act---because she seeks more than the $10,000 Little Tucker Act limit. Resp. to Order (Pl.'s Resp.), ECF No. 13 at 1; *see also* 28 U.S.C. § 1346(a)(2). Confusingly, she also cites the multidistrict litigation statute, 28 U.S.C. § 1407, and a federal habeas corpus relief statute, 28 U.S.C § 2255. *See* Pl.'s Resp. at 1. She also cites the Federal Circuit's January 11, 2019 affirmance of this court's dismissal of her previous case, which she mistakenly attributes to the Supreme Court, and states she has filed a "writ of execution" on February 5, 2020, in an unspecified circuit court. *Id.* at 2.

In reply, the government notes that the habeas and multidistrict litigation statutes do not concern our jurisdiction, Def.'s Reply, ECF No. 14 at 2–3 (citing, *inter alia*, *Haddad v. United States*, No. 15-1418C, 2017 WL 398353, at *3 (Fed. Cl. Jan. 30, 2017)), and argues that a transfer of the case to a district court under 28 U.S.C. § 1631 would not be in the interest of justice, since Mrs. Hawkins has already unsuccessfully litigated the claims in the district of her choice, *id.* at 4–5 (citing, *inter alia*, *Hawkins v. SunTrust Bank*, 764 F. App'x 289 (4th Cir. 2019)). Because she is representing herself, Mrs. Hawkins was permitted to file an additional response following the government's reply paper. *See* Order (Apr. 1,

---

[5] As the Court previously explained, "we do not possess the broad equitable powers which would be necessary to issue plaintiff's requested relief" of the return of her property. *Hawkins I*, 2018 WL 3214048 at *4 (citations omitted).

2020), ECF No. 16. From this paper, it appears that Mrs. Hawkins misunderstands the Supreme Court's denial of her petition for writ of certiorari, *Hawkins v. SunTrust Bank*, 140 S. Ct. 135 (2019), as a ruling in her favor because the damages she sought in the district court exceeded the Little Tucker Act limit, and also erroneously views the Federal Circuit's January 11, 2019 decision to be a judgment in her favor. *See* Amend. to Resp., ECF No. 17 at 1.

## II.  DISCUSSION

### A.  Standard of Review

Under RCFC 12(b)(1), a complaint must be dismissed when the court lacks jurisdiction over the complaint's subject matter. In considering a motion to dismiss for want of subject-matter jurisdiction, the court will normally accept as true all factual allegations made by the pleader and draw all reasonable inferences in a light most favorable to that party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002). If the facts reveal any reasonable basis upon which the non-movant may prevail, dismissal is inappropriate. *See Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572 (Fed. Cir. 1996). A plaintiff has the burden of establishing the court's jurisdiction over her claim. *See Reynolds v. Army & Air Force Exchange Service*, 846 F.2d 746, 747–48 (Fed. Cir. 1988).

*Pro se* litigants are normally allowed great leeway in presenting their claims. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Although a court must afford leniency to the plaintiff who acts in a pro se capacity, *see, e.g., Castro v. United States*, 540 U.S. 375, 381–82 (2003); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines*, 404 U.S. at 520–21, such a party is not exempt from the requirement that she plead facts sufficient to state a claim within the court's jurisdiction, *see, e.g., Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995). It is incumbent on the plaintiff to properly invoke the court's jurisdiction by establishing either a breach of contract by the federal government or identifying a money-mandating law which was allegedly violated by the government. *See United States v. Mitchell*, 463 U.S. 206, 216–17 (1983).

Under issue preclusion, or collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979). When the issue previously decided was a question of subject-matter jurisdiction, the application of collateral estoppel would require a dismissal for lack of subject-matter jurisdiction. *See Chisolm v. United States*, 82 Fed. Cl. 185, 194 (2008), aff'd, 298 F. App'x 957 (Fed. Cir. 2008). A plaintiff can cure a jurisdictional defect, however, by raising additional factual or legal matters which were not considered in the prior proceeding, and thus avoid issue preclusion. *See Lowe v. United States*, 79

Fed. Cl. 218, 229–30 (2007); *New Jersey Inst. of Tech. v. MedJet, Inc.*, 47 F. App'x 921, 926 (Fed. Cir. 2002) (holding that "when claims are based on a different statute in the [subsequent] lawsuit . . . issue preclusion cannot exist as to the determination of subject matter jurisdiction").

## B. Analysis

It is not unusual for non-lawyers representing themselves, like Mrs. Hawkins, to misunderstand the nature of our court's jurisdiction. Regrettably, this confusion seems to persist despite the Court's previous rulings in *Hawkins I*. To the extent her new pleadings differ from those in the earlier case, matters are still not within our subject-matter jurisdiction. First off, plaintiff seems to believe that our court can review the determinations of other federal courts, in particular the adverse decisions she received from the Federal Circuit, the South Carolina district court, and the Fourth Circuit. *See* Compl. at 1; Amend. to Compl. at 14, 22. She, however, is mistaken. Our court does not have jurisdiction over the actions of other federal courts. *See Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994) (holding our court "does not have jurisdiction to review the decisions of district courts . . . relating to proceedings before those courts"); *Earl v. United States*, 787 F. App'x 751, 752 (Fed. Cir. 2019) ("[T]he Claims Court is without jurisdiction to scrutinize the actions of another tribunal."); *Norington v. United States*, No. 16-1020C, 2016 WL 6879549, at *1 (Fed. Cl. Nov. 22, 2016) (holding no jurisdiction to review decisions of federal courts of appeal).[6]

Next, plaintiff expressly names as defendants SunTrust Bank, SCDSS, and the Sheriff, and extensively discusses actions taken by them. *See* Compl. at 1, 3–7. But as was previously explained to Mrs. Hawkins, *see Hawkins I*, 2018 WL 3214048 at *8 n.2, our court does not have jurisdiction to hear claims brought against persons or entities other than the United States, *see* 28 U.S.C. § 1491(a)(1) (authorizing "claim[s] against the United States"); *United States v. Sherwood*, 312 U.S. 584, 588 (1941) (explaining that under our jurisdictional statutes if "relief is sought against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court"). Congress has not given us the power to hear cases brought against private individuals or entities, *see Sherwood*, 312 U.S. at 588 (holding our predecessor "court is without jurisdiction of any suit brought against private parties"); *Mora v. United States*, 118 Fed. Cl. 713, 716 (2014), or against state and local government entities and officials, *see Treviño v. United States*, 557 F. App'x 995, 998 (Fed. Cir. 2014); *Anderson v. United States*, 117 Fed. Cl. 330, 331 (2014). Thus, insofar as Mrs. Hawkins brings claims against these non-federal entities, these must be dismissed as beyond our jurisdiction.

---

[6] Indeed, the Federal Circuit hears appeals of cases from our court, not the other way around. 28 U.S.C. § 1295(a)(3).

The more expansive range of constitutional violations that Mrs. Hawkins now alleges---encompassing the entire Bill of Rights plus the 13th and 14th Amendments---are leveled against the non-federal parties. *See* Compl. at 5–7. She seems to allege that the United States should be indirectly liable for these violations, contending HUD was "complicit" in failing to do its job to stop them. Compl. at 2. But for such a theory to pose a matter within our jurisdiction, the plaintiff must identify a money-mandating obligation on the part of the federal government, rooted in a contract or law. *See United States v. Mitchell*, 463 U.S. 206, 215–18 (1983); *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013). The only substantive statutes that Mrs. Hawkins has added to her allegations in this proceeding were a criminal statute concerning civil rights, 18 U.S.C. § 242; a criminal statute concerning housing discrimination, 42 U.S.C. § 3631; and a civil rights statute which authorizes civil enforcement by the Attorney General, 34 U.S.C. § 12601 (formerly 42 U.S.C. § 14141). Amend. to Compl. at 12–13.[7] But criminal laws generally are not within our jurisdiction, *see Joshua*, 17 F.3d at 379–80; *Stanwyck v. United States*, 127 Fed. Cl. 308, 313–315 (2016); and it is well-established that all three provisions invoked by Mrs. Hawkins are beyond our jurisdiction, *see, e.g., Clarke v. United States*, No. 2010-5133, 2010 WL 4569961, at *1–2 (Fed. Cir. Nov. 5, 2010) (holding that 18 U.S.C. § 242, 42 U.S.C. § 3631, and former 42 U.S.C. § 14141 were not money-mandating sources of our court's jurisdiction); *Harris v. United States*, No. 16-658C, 2016 WL 6236606, at *3 (Fed. Cl. Oct. 25, 2016), *aff'd*, 686 F. App'x 895 (Fed. Cir. 2017) (addressing 18 U.S.C. § 242 and former 42 U.S.C. § 14141); *Adams v. United States*, No. 07-809C, 2008 WL 4725452, at *2 (Fed. Cl. July 16, 2008) (discussing all three statutes).

The contentions of Mrs. Hawkins that HUD is responsible for the actions of the non-federal entities because it failed to enforce "the rules and laws on housing," Amend. to Compl. at 19, or due to a contract based on the use of a HUD form, *id.* at 15, were matters that were previously raised by her and rejected as failing to provide a source for our court's jurisdiction, *see Hawkins I*, 2018 WL 3214048 at *2, *5, *8. But a party cannot relitigate an issue that has already been decided. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Under the doctrine of issue preclusion, a party is prevented from successively litigating "an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even when the issue recurs in the context of a different claim. *New Hampshire v. Maine*, 532 U.S. 742, 748–749 (2001). This rule "prevent[s] parties from 'getting two bites at the apple' through re-litigating rather than appealing a decision through the

---

[7] In her opposition paper, Mrs. Hawkins also cites a federal habeas provision, 28 U.S.C. § 2255. *See* Pl.'s Resp. at 1. But the "habeas corpus provisions . . . have nothing to do with our court." *Haddad*, 2017 WL 398353 at *3; *see also Ledford v. United States*, 297 F.3d 1378, 1381 (Fed. Cir. 2002) (per curiam).

appropriate channels." *Lowe*, 79 Fed. Cl. at 227.  Issue preclusion is established through four elements:

> (1) an issue is identical to the one decided in the first action;
> (2) the issue was actually litigated in the first action;
> (3) the resolution of the issue was essential to a final judgment in the first action; and
> (4) the party defending against issue preclusion had a full and fair opportunity to litigate the issue in the first action.

*Shell Petroleum, Inc. v. United States*, 319 F.3d 1334, 1338 (Fed. Cir. 2003).

As the questions of our court's jurisdiction under these two theories of Mrs. Hawkins were decided in a previous case in our court that was brought by her, and were bases for dismissing her case under a motion which she opposed, *see Hawkins I*, 2018 WL 3214048, at *1–2, 5–8, all four of the issue preclusion requirements are satisfied.  Plaintiff has not alleged any additional details that would cure the jurisdictional defects upon which that previous dismissal rested, *see Lowe*, 79 Fed. Cl. at 229–30, and thus those matters cannot be re-litigated.  And even if the matters were considered anew, Mrs. Hawkins has still failed to plead the elements of a valid contract with the government, *see Turping v. United States*, 913 F.3d 1060, 1066 (Fed. Cir. 2019) (describing how there must be some "intent by the *Government* to be in privity of contract" with a party) (emphasis in original); *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990), and mere HUD oversight is not enough to establish a contractual obligation on the part of the government, even if government funds were involved, *see Katz v. Cisneros*, 16 F.3d 1204, 1210 (Fed. Cir. 1994).  Nor has she identified any money-mandating provisions of housing law that HUD violated, or explained how HUD's failure to enforce such laws could be characterized as anything other than the tort of negligence, which is outside of our jurisdiction.  *See* 28 U.S.C. § 1491(a)(1).

Similarly, to the extent Mrs. Hawkins's pleadings can be construed as attempting to reassert a Takings Clause violation by HUD, *see* Amend. to Compl. at 12, she has still failed to articulate any federal involvement in the foreclosure upon her former home, and thus cannot escape the preclusive effect of the Federal Circuit's decision in *Hawkins II*, which expressly rejected her constitutional claims.  *See Hawkins II*, 748 F. App'x at 326–27.  The other constitutional provisions raised, mostly in passing, by Mrs. Hawkins exclusively concerned the non-federal entities, *see* Compl. at 4–5, Amend. to Compl. at 15, and the claims based on them must be dismissed for the reasons stated above.  *See Sherwood*, 312 U.S. at 588; *Treviño*, 557 F. App'x at 998. [8]  In addition, the Court's prior determination that her claims

---

[8] While the exact timeline of events is hard to ascertain from plaintiff's complaint, it is also probable that the statute of limitations has expired on all claims based on

under the Fourth, Ninth, and Fourteenth Amendments are not within our subject-matter jurisdiction, *Hawkins I*, 2018 WL 3214048, at *7, which was upheld by the Federal Circuit, *see Hawkins II*, 748 F. App'x at 326–27, precludes her from repackaging those claims in this proceeding, *see Montana*, 440 U.S. at 153; *Shell Petroleum*, 319 F.3d at 1338.

In any event, her complaint contains no allegations concerning firearms or the quartering of soldiers, and thus cannot be found to have non-frivolously alleged a violation of the Second or Third Amendments, *see* U.S. CONST. amends. II & III, warranting a dismissal of any claims based on those provisions for lack of subject-matter jurisdiction, *see Bell v. Hood*, 327 U.S. 678, 682–83 (1946).  And even if her generic reference to the Bill of Rights were sufficient to allege violations of the remainder of its provisions, *see* Compl. at 2, 5–7, these other provisions have been found not to mandate the payment of money when violated, and thus cannot be the basis of our court's jurisdiction.  *See Featheringill v. United States,* 217 Ct. Cl. 24, 32–33 (1978) (First Amendment); *Mitchell*, 463 U.S. 206, 218 (1983) (Fourth Amendment); *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (Due Process clauses of Fifth and Fourteenth Amendments, and Equal Protection Clause of Fourteenth Amendment); *Dupre v. United States*, 229 Ct. Cl. 706, 706 (1981) (Sixth Amendment); *Webster v. United States*, 74 Fed. Cl. 439, 444 (2006) (Seventh Amendment); *Trafny v. United States*, 503 F.3d 1339, 1340 (Fed. Cir. 2007) (Eighth Amendment); *Patterson v. United States*, 2006 WL 5649292 (citing *Ogden v. United States*, 61 Fed. Cl. 44, 47 (2004)) (Ninth and Tenth Amendments).[9]  And finally, Mrs. Hawkins's references to the Thirteenth Amendment, *see* Compl. at 2, 5–7; Amend. to Compl. at 18, cannot present a claim within our court's jurisdiction, as that provision is not money-mandating, *Carter v. United States*, 228 Ct. Cl. 898, 900 (1981).

To sum things up, Mrs. Hawkins has failed to allege anything that is within our court's jurisdiction.  The United States Courts of Appeals for the Fourth and the Federal Circuits have ruled against her, and our court is not empowered to hear appeals from those courts (or a district court).  We also lack jurisdiction to hear claims against private entities such as SunTrust Bank, or against state and local

---

the actions of SunTrust Bank, SCDSS, and the Sheriff, which appear to have been taken more than six years before she filed this complaint.  *See* 28 U.S.C. § 2501 (setting a six-year limit); *John R. Sand & Gravel Co. v United States*, 552 U.S. 130, 128 (2008); *Bowen v. United States*, 292 F.3d 1383, 1385 (Fed. Cir. 2002).

[9] As the Court previously explained, *Hawkins I*, 2018 WL 3214048, at *8 n.3, violations of the Fifth Amendment's Due Process Clause only come within our jurisdiction if they involve illegal exactions, *see Aerolineas Argentinas*, 77 F.3d at 1572–73, which is not the case here.

governmental entities such as the South Carolina Department of Social Services or the Anderson County Sheriff's Office. This Court had previously determined that Mrs. Hawkins had not properly pled the existence of a contract with the federal government, or the involvement of the federal government in the foreclosure upon her home, and she has not alleged anything in this case that could alter those conclusions. And Mrs. Hawkins has not identified any law, regulation, or constitutional provision which requires the payment of money damages when violated and which the federal government has allegedly violated. For the foregoing reasons, our court lacks jurisdiction over the subject-matter of Mrs. Hawkins's case, and thus the government's motion to dismiss this case, ECF No. 11, is **GRANTED** pursuant to RCFC 12(b)(1).

### III.  CONCLUSION

While the Court understands how distressing it must be for Mrs. Hawkins to have suffered the death of her husband and the loss of her home, Mrs. Hawkins must understand that these are not matters that our court has the power to address. For the reasons stated above, defendant's motion to dismiss this case for lack of subject-matter jurisdiction, under RCFC 12(b)(1), is **GRANTED**. The Clerk shall close the case.

**IT IS SO ORDERED.**

VICTOR J. WOLSKI
Senior Judge